JAMES L. MARRETT and another *vs.* ISAAC BRACKETT.

*Check as payment. Usage.*

The taking of a check for an existing debt is not, *ipso facto,* payment of the debt.

The acceptance of a check implies an undertaking on the part of the holder to use due diligence in presenting it for payment.

The holder is in the exercise of due diligence when he presents it for payment in accordance with the usage of the banks where payable, and of the persons having accounts with such banks—provided the usage is well established, reasonable and lawful, and recognized by the mercantile community and the parties to the check.

And it makes no difference that the check is that of the agent of the debtor.

ON FACTS AGREED in the superior court for this county.

ASSUMPSIT on a promissory note given by the defendant to the plaintiffs.

Just before Aug. 19, 1871, the plaintiffs, resident in Portland, sent the defendant, residing in Springvale, in the county of York, a statement showing $236.44 due them. Thereupon, on Saturday, Aug. 19, 1871, the defendant remitted to O'Brion, Pierce & Co., merchants of Portland (friends of the defendant, but in nowise

agents of the plaintiffs), funds to pay the plaintiffs and others. About 4 o'clock on Saturday afternoon, Aug. 19, 1871, after banks in Portland were closed, O'B., P. & Co. sent the plaintiffs their check on the First National Bank of Portland, for the amount of the plaintiffs' claim against the defendant, and took a receipt 'from O'Brion, Pierce & Co., two hundred and thirty-six dollars and forty-four cents, on account of Isaac Brackett, Springvale,' but did not deliver up their note, or receipt their account.

On Monday morning, during usual banking hours at Portland, plaintiffs deposited with their usual deposit, the check for collection at the Casco Bank in said Portland, where plaintiffs then kept their account and made their deposits.

By a well-established usage of the banks in Portland, well known to the whole mercantile and trading community, and to said O'Brion, Pierce & Co., all checks are exchanged at a 'clearing-house' held every morning by the clerks representing each bank, said exchange including only checks held by each bank at the close of the previous day's business, and each bank, receiving at its counter, through its clerk, checks from the 'clearing-house,' by usage has the right immediately to return any of said checks which they have not funds to cover. It is also the settled usage at Portland with persons having bank accounts to deposit in their own banks checks received by them on any bank, said deposit being made either the day or the next day after the check is received, according as it is received before or after the banks are closed. And this usage is of long standing and well known at all the banks of Portland, and among all those keeping accounts at such banks, and was well known to O'Brion, Pierce & Co., and such had long been also the practice of O'Brion, Pierce & Co. Said check passed through the clearing-house on Tuesday morning, at the usual hour and in the usual manner, and reached the First National Bank that morning at the usual hour, and was then thrown out for want of funds, said O'Brion, Pierce & Co. having then failed, and said check was immediately returned to plaintiffs by the Casco Bank, and by plaintiffs to O'Brion, Pierce & Co., and plaintiffs in a day or two afterwards called on defendant for payment.

Had the check been presented to the First National Bank on Monday or Tuesday, before 11 A. M., it would have been paid, as O'Brion, Pierce & Co. then had funds there.

The court to render such judgment as the law and facts require.

*W. L. Putnam*, for the plaintiffs, cited *Taylor* v. *Wilson*, 11 Met. 53, 54; *Wyatt* v. *Marquis of Hertford*, 3 East, 147; *Strong* v. *Hart*, 6 B. & C. 160; Chit. on Cont. 663; *Marsh* v. *Pedder*, 4 Campbell, 257; 2 Pars. on Cont. 623, note *m*; *Everett* v. *Collins*, 2 Campbell, 515; *Winthrop* v. *Carleton*, 12 Mass. 4.

*Ira T. Drew*, for the defendant, contended that a check on a bank is in substance a bill of exchange payable on demand and governed by the same rules. *Salt Spring Bank* v. *Syracuse Sav. Bank*, 62 Barb.

It was received as payment, as evidenced by the receipt.

Plaintiffs guilty of laches.

DICKERSON, J.   Assumpsit on a promissory note and account. The defendant claims that the note was paid by a check, drawn on the First National Bank of Portland, by O'Brion, Pierce & Co., in favor of, and received by the plaintiffs.   Previous to the delivery of the check, the defendant remitted the amount due the plaintiffs to O'Brion, Pierce & Co., for the purpose of paying the plaintiffs' claim.   O'Brion, Pierce & Co. were friends of the defendant, but were not agents of the plaintiffs.

The case calls for an adjudication upon the legal effect of taking a check for a previous debt, and also of a usage of the banks in Portland, whereby, at a 'clearing-house' held every morning by the clerks representing each bank, all checks held by each bank at the close of the previous day's business are exchanged, with the right of each bank immediately to return any check drawn upon it, and thus received from the 'clearing-house,' which it has not funds to cover, and the further usage, immediately connected with the foregoing, of persons having bank accounts in Portland, to deposit, in their own banks, checks received by them on any bank, on the

day or day after they are received, according as they are received before or after the banks are closed.

It is well settled that taking a check for an existing debt is not, *ipso facto*, payment of the debt. *Taylor* v. *Wilson*, 11 Met. 44; not even if it be given for a note which is surrendered; *Olcott* v. *Rathburne*, 5 Wend. 490; nor where a receipt is given for the old debt upon the delivery of the check. *Bradford* v. *Fox*, 38 N. Y. 289; nor if, on presentment of one check the holder receives from the drawer a check for the amount of his check. *Kelly* v. *Second Nat. Bank of Erie*, 52 Barb. 328.

But it is held in these and numerous cases, that the acceptance of a check implies an undertaking on the part of the holder to use due diligence in presenting it for payment, and if the drawer sustains loss for want of such diligence, it will be held to operate as payment of the original debt.

The holder of a check is in the exercise of due diligence when he presents it for payment in accordance with the usage of the banks in the place where it is made payable, and of the persons who have accounts with such banks, provided such usages is well established, lawful, and reasonable in its character, uniform and general in its application, known and recognized by the mercantile and trading community, and by the parties to the check. When such a usage exists, those who make contracts within its purview are presumed to have made them with reference to it; and it is deemed to form a part of their contracts, as much so as though it was actually incorporated into them. *Williams* v. *Gilman*, 3 Maine, 281; *Leach* v. *Perkins*, 17 Maine, 465.

The case shows that a usage upon this subject, having all the necessary characteristics as such, existed among the banks in Portland, and the persons who had accounts with them; and that in presenting the check for payment, the plaintiffs strictly conformed to that usage. In doing so he complied with the contract he made with the defendant's agents when he took the check; and the defendant can gain nothing by the check having been given by his agents instead of himself. The taking of the check was not a

payment of the note, and the plaintiffs cannot be guilty of laches for presenting it according to the agreement of the parties, as interpreted by the usage; nor should they suffer for the misfortune or fault of the defendant's agents.

Besides, the presumptions of law, with respect to the intention of the parties, arising from the usage, are in harmony with the inference to be drawn from the other facts in the case. The plaintiffs did not surrender the note, nor receipt their account when they took the check; nor does it appear that the drawers requested them to do so. If the plaintiffs, by taking the check, intended to take O'Brion, Pierce & Co., as paymaster, according to the usual course of business, the defendant would have been released. But this was not done.

The conclusion is irresistible that neither the drawers nor the holder of the check required it as payment of the note, and that the parties are remitted to their rights under the implications of law arising from the usage of the banks in Portland, and of the persons who have accounts with them.

*Judgment for plaintiffs for amount of note and account.*

Appleton, C. J.; Cutting, Walton, and Danforth, JJ., concurred.